Reese J.
delivered the opinion of the court.
The question made in this record is, whether Fanny Moore, the plaintiffbelow, is a slave, and the property of the defendant below, in his character of representative of Daniel Sla-vins deceased. This question depends upon the construction and effect of the records set forth in the hill of exceptions. Those records show that on the third Monday of September *306 1830, a court of pleas and quarter sessions for Claiborne county, was begun and held at the court house in Tazewell, and that there were present a number of magistrates whose names are given, amounting to nineteen. The entire proceedings of that day are shown, consisting of many matters of various character. On the eleventh page of the transcript of that day’s proceedings, is set forth the petition of Daniel Sla-vins, praying the emancipation of the plaintiff below, and various other slaves, upon which was a certificate as- follows-, “the court unanimously agree to grant the prayer of this petition, on the petitioners entering into bond as the law requires in the penal sum of ten thousand dollars. Witness my hand and seal, this 20th day of September 1830. J. H. Chapman, Chairman.” Then this entry follows, “upon consideration whereof, it is ordered by the court that said slaves mentioned in said petition, be emancipated and set free, and entitled to all the rights and privileges of free persons of color in this State; and thereupon said Daniel Siavins with Archibald Cooper, entered into bond, conditioned as the law directs, to indemnify the county of Claiborne against the future charges and maintenance of said free persons of color.” The records show numerous other entries made on that day, some of which recite the number of justices, and others do not.
As the statute requires that a majority or nine of the acting justices should be present, and two-thirds of those present should concur in the act of emancipation, the entry in this case not incorporating a statement that so many were present, we have, it is argued, no record evidence of the presence of nine, and the concurrence of six justices in the act of emancipation.
The recordavers that the court was begun and held, and that there were present those nineteen justices, and the entry in question avers, that the court unanimously concurred in the act; now if from the record it appeared that nothing but the emancipation of Siavins’ negroes was on that day transacted, no one would contend that there was not plenary record evidence of the presence, not of nine only, but of nineteen justices. But it is said much more was done, and that we know from observation that justices are in the habit of vacating their seats, and returning to them again, and that their number flue- *307 tuates during each hour. Can we properly refer to this sort of knowledge for the purposeofinferring their absence, when-the record states their presence? But it is said that the record, in entries preceding in the order of place, the one in question, shows that fewer, not indeed than nine, but than the number recorded as present at the opening of the court participated in its action. We reply, first, that does not prove their absence, they might have been present though not participating in the particular transactions referred to. But secondly, the order of place and juxtaposition of entries, do not in the records of any court establish the precedence or sequence in point of time in the transaction of business. If in this case, the record had not shown that the court was opened andheld by nineteen justices, itmighthavebeen contended with much force, that those who affirm that nine were present when any particular act was done, should show affirmatively by the record of that act, that nine were present. So on the other hand, we incline to think, that the record having shown affirmatively that the court was opened and held by a competent and specific number of magistrates, those who allege the absence, of a portion of them, or the presence of a smaller number when any particular act was done the same day, must show affirmatively by the record that such was the fact.
But if we were mistaken in this view of the subject, and the record left it doubtful and uncertain whether the requisite number of justices were present at the act of emancipation, what would be the effect of such a state of the record upon the rights of these parties? The act of emancipation is a concurrent act by the owner of the slave and the government. The one has a property in the slave, the other a control over his social condition. The act of emancipation therefore, involves the consent and act of the master, and the consent of the government. His solemn petition in open court, his signing a bond to indemnify the counly, give the most decisive evidence of his wish. The act is complete on his part. The presence of nine justices is not required for the guard and protection of the masters rights, they are individual, he can look to them himself. It was intended for the protection of the public, that improper persons might not intrude themselves or *308 ⅛6 intruded into a new social condition, hurtful to the common good. II then, the entry omit to show that the proper num-her of persons were present to protect the interests of the public, what is the consequence; we do not ask upon the social condition of the slave, but upon the rights of the master? Is it as to him merely void? Is it voidable by him? We incline to think not. Upon the whole let the judgment be affirmed.
Judgment affirmed.